## MORMAN *v.* HARRINGTON.

1. VENDOR AND PURCHASER — FRAUDULENT REPRESENTATIONS — EVIDENCE—QUESTION FOR JURY.

In an action by a vendor to recover the price of land, defendant testified that plaintiff represented to him, as an inducement to purchase, that he had examined the land, and found, at a certain depth below the surface, the same plaster rock that was to be found on adjoining land, where there were valuable quarries, with which defendant was familiar; that, relying on such representation, he made the purchase; and that the land proved to be worthless for plaster purposes. *Held,* that the evidence justified the submission to the jury of the question of plaintiff's fraud.[1]

2. SAME—DEFENSE OF FRAUD — ESTOPPEL TO ASSERT — RECOUPMENT.

The fact that a vendee of land paid a balance on the purchase price, and received his deed, after the discovery of fraud on the part of the vendor, will not estop him to recoup his damages occasioned by the fraud, in an action by the vendor upon the vendee's guaranty of stock transferred as part of the consideration.

3. SAME—EVIDENCE OF VALUE.

In support of a defense of fraudulent representations as to the value of land, the vendee may show the price paid by the vendor.

Error to Kent; Grove, J.   Submitted October 7, 1898. Decided December 6, 1898.

*Assumpsit* by Samuel A. Morman against Eli F. Harrington on a contract of guaranty.   From a judgment for defendant, plaintiff brings error.   Affirmed.

*McGarry & Nichols,* for appellant.

*Crane, Norris & Stevens,* for appellee.

---

[1] The right to rely upon representations made to effect a contract as a basis for a charge of fraud is considered at great length in a note to *Fargo Gaslight & Coke Co.* v. *Fargo Gas & Electric Co.,* (N. Dak.) 37 L. R. A. 593.

LONG, J.   On March 10, 1893, the parties hereto entered into a land contract, by which the defendant became the purchaser from plaintiff of 40 acres of land in Kent county for the price of $7,000.   Defendant paid thereon at the date of the contract $4,950 in cash or its equivalent, and turned over to plaintiff at the same time $2,400 of the preferred stock of the Gypsum Plaster & Stucco Company, at a valuation of $2,000; giving at the same time a written agreement to pay the plaintiff $2,000 for the stock whenever it should be rendered worthless by the insolvency of the company.   This left only $50 of the purchase price unpaid, which defendant afterwards paid, taking his deed for the land.   In May, 1895, the stock of the Gypsum Plaster & Stucco Company became worthless by the insolvency of the company, and plaintiff made demand upon the defendant for the payment of the $2,000.   This action was commenced to recover the $2,000 under the contract.   The defendant pleaded that the contract was procured by misrepresentations by the plaintiff as to the character of the land, and that he (defendant) was thereby deceived and defrauded, and that he would recoup his damages on the trial.   He gave evidence that the lands were sold to him as plaster lands, but that they were in fact worthless for plaster purposes, and good only for farming.   He claims that he was not informed that the lands were worthless for plaster until about 18 months after his purchase; that he thereupon employed experienced men to drill into the land at various points, and discovered its character, and so informed plaintiff.   No question arises in the case over the fact that the stock was worthless, or that the plaintiff had a right to recover the $2,000.   Neither was there any question but that the land was worthless as plaster land.   The only question related to the alleged misrepresentations of the plaintiff as to the character of the land.   The jury returned a verdict in favor of defendant, and the plaintiff brings error.

1. It is claimed by counsel for plaintiff that there was no evidence given on the trial of any fraudulent state-

ments on the part of plaintiff which justified the court in submitting the case to the jury. The defendant testified on the trial as follows:

"I asked him why he bought it, and why he wanted to sell it. He told me that at the time he bought it he was engaged in the manufacture of whiting; that business had run out, and he wanted to sell the land. I asked him about the plaster there,—the depth from the surface of the ground. I asked him how he knew about it. He said he had examined the land before he bought the last 20. I asked him what he found. He told me he found the same rock that they had at the Union Mills quarry. I asked him the depth. He said it was about 10 feet before they struck the rock. We talked about the matter considerably. I wanted to get what information he had about it. If I purchased it, I was purchasing it on his statement. I had never been on the land, or made an examination. I did not know whether it was plaster land or not, except as he told me. When he told me he had examined it, and found plaster there at the depth of 10 feet or thereabouts, I believed it. I relied upon his statements as true. I sought no other information than that given me by Mr. Morman in regard to the land, nor had I any other information; and I purchased the land upon the representations made to me by Mr. Morman, and on nothing else. Morman told me he did not know what the combination might be on plaster; that they had practically gone out of the whiting business, and he did not need the land. He said they found the same rock they had in the Union Mills quarry. I was very familiar with the Union Mills quarry. The Union Mills quarry was from 8 to 12 feet below the surface. The top rock was about 8 feet below the surface. The lower strata or lime rock in the Union Mills quarry was from 12 to 13 feet thick. As to the extent of the Union Mills quarry, it was pretty even, except in places where there was no top rock. To the extent that they had quarried out, it was substantially even. The Union Mills quarry was situated about 60 rods from the land in question. The Union Mills Company land adjoins the Morman land, but it is not quarried up to the line."

On cross-examination the defendant testified as follows:

"When I met Morman, on Pearl street, he told me to

118 MICH.—40.

come to his office. I went to his office, and had a talk about the purchase of this property. He told me he was engaged in the manufacture of whiting when he bought this land. He did not tell me he bought it for the purpose of manufacturing whiting, but said he didn't know but he might need it; there might be a combination in the plaster business, so that it would be best for them to own their own quarry. I asked him how he knew this plaster was there, and what there was. He said he examined it before he bought the second 20,—as I understood it, that he made an examination. I do not know whether he stated he made it personally or otherwise, but he examined the property before he bought the second 20, and he ascertained, either by personal examination or by having it examined, that there was plaster rock there. He had made an examination of the land to see what there was there, and he afterwards purchased it. He said he found the same rock that the Union Mills Plaster Company was working on, and that the depth— I was particular about the depth it was, and he said it was about 10 feet.

" *Q.* And that was all he said upon his part, was it not, in respect to that matter?

" *A.* Oh, we talked some about it; but what I was getting at was, what he knew there was in that land. If it was plaster land, I wanted to buy it. He said he found the same rock that the Union Mills was working on, and that it was at the depth of about 10 feet. Upon that statement I made the purchase."

The court charged the jury, substantially, that under the undisputed evidence the plaintiff was entitled to recover the sum of $2,000, unless the defense of false representations set up by the defendant was established by the evidence, and that the burden of proof was upon the defendant to establish it. Upon the question of false representations the court instructed the jury as follows:

" If the jury are satisfied from all the evidence in the case that the plaintiff did make the representations substantially as claimed by the defendant, and as before stated, and are further satisfied from all the evidence that such representations were believed and relied on by the defendant, as claimed, and that such representations were in fact substantially untrue, as claimed by the defendant, as be-

fore stated, and that the defendant would not have made
the purchase in question had the representations not been
made, then the defendant is entitled in this action to
recoup against the plaintiff the damages he suffered there-
by; and this is true whether the representations were
made by the plaintiff innocently or not,—the plaintiff being
responsible for them in such case, although he believed
them to be true. A representation made with a knowl-
edge that it is received in a sense that makes it deceptive
is legally fraudulent. Designed partial statements which
deceive, and concealment of facts such as to make those
declared partial and misleading, are legally fraudulent.
If, in this case, you find that the plaintiff represented to
the defendant, during the negotiations for the sale of the
land, that he had examined the land, and found it con-
tained the same rock as the Union Mills Plaster Company
land; and if you find that this statement was reasonably
calculated to mean to the defendant, under all the circum-
stances shown by the evidence, that the land owned by the
plaintiff, and which he was about to sell, contained plaster
rock in the same degree and in the same way as the lands
of the Union Mills Plaster Company, and that the defend-
ant, under all the circumstances, had a right to under-
stand the representation of the plaintiff in that way; and
if you find that he purchased the land in reliance upon that
representation, and in the belief, based on said representa-
tion, that the land contained plaster rock in the same
degree and in the same way as the Union Mills Plaster
Company land, 'and would not otherwise have purchased
the same;' and if you find that in fact this was not the
case, and that the defendant was deceived through the
representations made by the plaintiff,—then the defendant
is entitled to recoup in this action the damages which he
sustained on account thereof."

It is true that this testimony was contradicted in great
part by the plaintiff, but we are dealing simply with the
question as to whether there was any testimony which
warranted the court in submitting the question to the jury.
We think the court was not in error in this. The land,
or a large part of it, had no plaster upon it. If the testi-
mony of the defendant be true, the plaintiff gave him to
understand that he had made an examination of the land,
or caused one to be made, and had found the same rock

as in the Union Mills quarry; and this statement was made in answer to an inquiry as to how the plaintiff knew about there being plaster there. It is a case where the plaintiff positively affirmed the facts concerning the quality and value of the land, and his assertion was something more than mere opinion. In the case of *Jackson* v. *Armstrong*, 50 Mich. 65, it was held that one who obtains land in a trade, and before doing so goes upon and looks at it, has nevertheless a right to show that he was misled by the representations of the other party, if they related to matters of which no one could adequately judge on a casual inspection, such as the capability of the land for drainage, and the reason why water was standing. In the present case the value of the land consisted in the plaster rock. No one going upon the land and making a casual inspection could ascertain that fact, for the rock lies some feet beneath the surface. Defendant was assured by plaintiff that it contained the same rock as the Union Mills quarry, which was a valuable property. This was a positive statement of a fact, and the defendant had a right to rely upon it, and was not bound to verify it by an independent investigation. 2 Pom. Eq. Jur. § 895.

2. Counsel for plaintiff also claim that the defendant, having paid the $50 due on the purchase price of the land, and taken the deed, with knowledge of the fraud, is now estopped from making the defense here set up, as the parties cannot be placed *in statu quo*. This contention cannot be sustained. The defendant by his plea set up the fraud in the transaction, and seeks to recoup his damages by reason of it. He had the right to elect his remedy. If he sought to rescind the contract, there would be some force in the contention made by plaintiff's counsel. That is not what is attempted here by the defendant. He proposes to keep what he has received, and recover the damages he has sustained This he has the right to do; and the fact that he paid the balance of the purchase money, and received his deed, after the discovery of the fraud,

will not estop him from setting up the fraud in defense to the action.  *Warren* v. *Cole*, 15 Mich. 265; *Lenox* v. *Fuller*, 39 Mich. 273.

3. It is also claimed that the court erred in permitting counsel for defendant to ask the plaintiff what he paid for the land.  There was no error in this.  The defense claimed false representations as to value, and in such cases a broad latitude is given.  In *Stone* v. *Covell*, 29 Mich. 359, the action was for misrepresentation concerning a note and mortgage taken in exchange for chattels of the plaintiff.  Plaintiff was allowed to show the value of the chattels.  It was said:

"We think this was entirely proper.  This was an action for fraud in a bargain.  In determining whether a fraud has been committed, it is always desirable to have the jury enabled to put themselves, as nearly as may be, in the place of the parties, that they may fully appreciate the bearing of their conduct.  The value of what is transferred on either side must bear more or less on the motives of both."

See, also, *Ganong* v. *Green*, 71 Mich. 10.

4. Some contention is made that the court permitted the defendant to show alleged frauds outside of those claimed by the pleadings.  We have examined the testimony with care, as well as the charge of the court, and are of the opinion that the court confined the defendant to the issues made by the pleadings.  We think a discussion of this point is unnecessary.  The theory of the plaintiff was submitted to the jury, and the court said to them:

"A question has come into this case.  It relates to the fact as to whether the defendant relied solely upon the representations claimed to have been made by the plaintiff, and was induced thereby to purchase the land in question.  Therefore, unless you find that Mr. Harrington did rely solely on the plaintiff's representations, and altered his condition solely in consequence of such representations, he would have no cause of complaint, and the plaintiff is entitled to recover."

This part of the charge was certainly as favorable to the plaintiff as he could ask.

We find no error in the record, and the judgment must
be affirmed.

The other Justices concurred.