## ELSON *v.* HARRIS.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—VENDOR AND PUR-
CHASER—FRAUD—INSTRUCTIONS—REQUESTS TO CHARGE—WEIGHT
OF EVIDENCE.

> Defendant vendors' claims that new trial in action for fraud
> should have been given for error in jury instructions and
> refusal to give certain requests and because the verdict for
> plaintiff was against the overwhelming weight of the evidence
> *held,* without merit under record presented.

2. VENDOR AND PURCHASER—FRAUD—CONTINUANCE OF PERFORMANCE
—ESTOPPEL.

> A party to whom fraudulent misrepresentations were made and
> who relied thereon in entering into contract for purchase of
> land and sustained damages by reason thereof may keep that
> which he was fraudulently induced to purchase and sue for such
> damages as will make good the inducing representations without
> being estopped from recovery by continuing to make the pay-
> ments called for by the contract after discovery of the fraud.

3. FRAUD—WAIVER—CONTINUANCE OF PAYMENT UNDER EXECUTORY
CONTRACT.

> A cause of action for fraud, not in the nature of a suit for
> rescission, is not waived by continuity of executory payment
> after discovery of the pleaded fraud, overruling *Van Scherpe* v.
> *Ulberg,* 232 Mich 699; and *Monroe* v. *Hoffman,* 276 Mich 281.

Appeal from Wayne; Weideman (Carl M.), J.
Submitted April 7, 1959. (Docket No. 9, Calendar
No. 47,414.) Decided June 5, 1959.

---

REFERENCES FOR POINTS IN HEADNOTES
[2] 55 Am Jur, Vendor and Purchaser § 569 *et seq.*
[3] 55 Am Jur, Vendor and Purchaser § 571.

Case by Fannie Elson, individually and as executrix of the estate of Charles Elson, deceased, against Samuel J. Harris for damages because of fraudulent misrepresentations on sale of building. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*William S. Munger* (*Marguerite M. Koti,* of counsel), for plaintiff.

*John G. Cross,* for defendant.

BLACK, J. This is an action on the case for fraud. Trial to court and jury resulted in a verdict for plaintiff in the sum of $8,447.02, upon which judgment was entered. Defendant's motion for judgment notwithstanding verdict or, in alternative, for new trial, was denied. Defendant appeals.

In 1951 defendant owned certain business property situated on Grand River avenue, in Detroit. A 2-story business structure—known in the record as the "bakery building"—had been constructed on the premises and was in use at the time for retail and other purposes. The building was about 50 years old. Its disputed condition, when the parties dealt with regard to purchase and sale of the property, gave rise to the cause of action we are asked to consider.

October 5, 1951, by a "first preliminary agreement" Charles Elson, since deceased, agreed to purchase the property from defendant. The preliminary agreement recited:

"Owner states heating plant in good condition no leaks have been reported from roof no building or bakery violation no trouble with plumbing."

A "second preliminary agreement" was executed October 31, 1951. This instrument was signed by

Charles Elson and plaintiff Fannie Elson, husband and wife, as purchasers, and by defendant—and the latter's wife—as sellers. This second instrument recited:

"Said first parties state that the heating plant and plumbing in said premises are in good condition; that no leaks are evident in the roof of said premises, and that no building or bakery violations or infractions of law are pending or threatened in connection with said premises or any portion thereof."

In pursuance of the above, a land contract was executed by all of the last named parties. By its terms Mr. and Mrs. Elson prepared to and did take possession, and assumed landlordship with respect to outstanding leases of portions of the building, in January of 1952. According to plaintiff's proofs, they shortly discovered dismaying evidence of long standing leakage of rainwater in and around the roof at the front of the building. Upon investigation it was found that the action of the elements had caused the brick veneer front of the building to separate— or "bulge"—from the supporting masonry wall proper, and "that when it rained water was dripping down into the pie case or show window in the front of the bakery."

Such proof, supported by testimony tending to show the cost of corrective repairs, made up the gist of plaintiff's submission below that defendant's quoted representations were false, that she and her husband did rely thereon in the inducement, and that she in consequence became entitled to an award of compensatory damages.

On appeal defendant asserts right to a directed verdict on ground that plaintiff has waived "the claimed fraud;" such alleged waiver consisting of continued regular payment, by plaintiff up to the time of trial, of the monthly instalments called for

by the mentioned land contract. Defendant asserts further, as ground for new trial, that the trial judge erred in jury instruction and in the refusal of certain requests for jury instruction, and that the jury's verdict was contrary to "the overwhelming weight of the evidence."

With exception of defendant's principal allegation on appeal—that the trial judge should have directed a verdict on the point of waiver,—we discover no merit in any of his stated questions. This brings us to the question of waiver; a question which has led our membership to some little research and contemplative comparison of authorities.

Relevant decisions having been scrutinized, it is quite understandable that counsel disagree on the subject of waiver of fraud in a case such as they have brought here. Citing particularly *Van Scherpe* v. *Ulberg*, 232 Mich 699; and *Monroe* v. *Hoffman*, 276 Mich 281, defendant insists that the continued faithful payment by plaintiff, of the monthly instalments called for by this executory land contract, from and after discovery of the leakage and its consequences, operated as a waiver of the pleaded cause of action. Citing authority from other jurisdictions, plaintiff insists (she emphasizes that this is a suit for damages—not one for rescission) that the right of action remains intact and that she had a right to affirm and sue, on discovery of the fraud as found by the jury, and that the remedy of rescission is by no means exclusive.

We are constrained to agree with plaintiff. Why, and for what good reason, may not the defrauded party keep that which he was induced—by fraud— to purchase, and yet sue for such damages as will make good the inducing representations? Has he not in good faith purchased that which he may desire to keep, even in its misrepresented condition? Has this plaintiff not made due down payment fol-

lowed by such change of position and possession as might render the remedy of rescission quite inadequate? Must she risk the uncertain litigatory result of a decision to breach the executory agreement, by "stopping short" the performance thereof, as a condition of suit for damages? Why, come to think of it, should a court of law or equity hear an adjudged deceiver assert this technical defense of "waiver" when he is unable to plead and prove some detrimental change of position in reliance on the continuity of executory payment? He is as guilty of the proven fraud as before, whether his victim continue payment or not, and should be compelled to supply that which is necessary to fulfillment of his representations in order that the deceived party may fairly receive that which was bargained for; in this case a business building free from a serious and obviously matured condition of roof and wall leakage.

Both counsel appear as having overlooked certain of our earlier decisions, handed down upon the sound reasoning of noted judges seated here during the 19th century. This quotation, taken from *Morman* v. *Harrington,* 118 Mich 623, 628, 629, will suffice by way of reference:

"Counsel for plaintiff also claim that the defendant, having paid the $50 due on the purchase price of the land, and taken the deed, with knowledge of the fraud, is now estopped from making the defense here set up, as the parties cannot be placed *in statu quo.* This contention cannot be sustained. The defendant by his plea set up the fraud in the transaction, and seeks to recoup his damages by reason of it. He had the right to elect his remedy. If he sought to rescind the contract, there would be some force in the contention made by plaintiff's counsel. That is not what is attempted here by the defendant. He proposes to keep what he has received, and recover

the damages he has sustained. This he has the right to do; and the fact that he paid the balance of the purchase money, and received his deed, after the discovery of the fraud, will not estop him from setting up the fraud in defense to the action. *Warren v. Cole*, 15 Mich 265; *Lenox v. Fuller*, 39 Mich 268, 273."

We approve and readopt the above rule and move on strength thereof to overrule *Van Scherpe* and *Monroe*, together with other Michigan cases of like import which, in so many words, hold that a cause of action for fraud—not in the nature of a suit for rescission—is waived by continuity of executory payment after discovery of the pleaded fraud.

The rule quoted from *Morman* v. *Harrington*, *supra*, is that of the clear weight of recognized authority. See the recent exhaustive annotation appearing in 13 ALR2d 807 headed "Proceeding under executory contract after discovering fraud as waiver of right to recover damages for the fraud," and this accurate summary of cogent judicial thought (p 812 of annotation):

"The great majority of the cases support the rule that where the defrauded party has in part, or at least in substantial part, performed the contract at the time of discovering the fraud, he may go on with performance and also recover or have the appropriate allowance of damages. And the decisions are very strongly to the effect that there is no waiver by the mere going on with the contract if, when the fraud was discovered, a stopping or abandonment of performance was not reasonably practicable, or, to express a similar idea, if the defrauded party was then in a situation from which he was unable to recede without prejudice."

See, also, the excellently reasoned comments appearing in 34 Mich L Rev 384, and 35 Mich L Rev

665. The latter critique is especially helpful. We quote therefrom as follows (pp 665, 666):

"The defrauded purchaser of land on contract sometimes finds himself in an embarrassing situation. It may happen that none of the alternative courses of action open to him afford adequate protection. Should he continue to perform his obligations, the court, as in the principal case,[*] is likely to find that a 'waiver' of the fraud precludes resort to a damage action for fraud and deceit. Should he, on the other hand, refrain from further performance, he would in many jurisdictions be subject to summary foreclosure proceedings, which, according to decisions in at least one State, would cancel the contract and deprive him of his cause of action for fraud and deceit. The third alternative, rescission of the contract, not only may be defeated at the outset by the often technical requirements of restitution, by the theory of affirmance by continued use of the subject matter, or by some form of the doctrine of election of remedies, but even if successful necessarily deprives the plaintiff of the land and the benefit of his bargain. This paralyzing convergence of fraud and contract doctrines appears to be without sound basis in principle."

In the case before us the purchasers, prior to discovery of the fraud, had taken possession of the subject premises and had so far entered upon due performance of the undertakings assumed by them as to render it quite impracticable to rescind or stop performance. They pursued that course justice, and reasoning toward justice, should encourage. So, there being no evidence of an actual estoppel of which defendant might properly avail himself, we hold that

---

[*] *Monroe* v. *Hoffman, supra.*—REPORTER.

plaintiff's cause of action stands intact as against defendant's said allegation of error.

Affirmed. Costs to plaintiff.

DETHMERS, C. J., and CARR, KELLY, SMITH, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.