## MINCHELLA v FREDERICKS

Docket No. 61918. Submitted May 9, 1984, at Detroit.—Decided
   November 5, 1984. Leave to appeal applied for.

Rudolph R. Minchella and Kathleen R. Minchella (the sellers)
   filed a complaint on February 28, 1980, in the Oakland Circuit
   Court seeking to foreclose a May 8, 1975, land contract and a
   security agreement incorporating a promissory note by which
   they sold a restaurant with a liquor license to Edward F.
   Fredericks and his corporation, Fredericks Enterprises, Inc.
   (the purchasers). The corporation was the land contract vendee
   and Mr. Fredericks personally bought the equipment, liquor
   license and other personal property of the business. The pur-
   chasers filed a counterclaim for damages alleging fraud and
   misrepresentation and added as counterclaim defendants the
   sellers' agent, Professional Bar Brokers Realty Inc., and Michi-
   gan Bar Brokers Inc., both owned by the same men (Bar
   Brokers). The foreclosure action, being equitable in nature, was
   tried by the trial court, Hilda R. Gage, J., while the counter-
   claim was presented to a jury. After the proofs were presented,
   the trial court directed a verdict in favor of the sellers and Bar
   Brokers on the counterclaim. Later the trial court granted a
   judgment of foreclosure. The trial court also granted Bar
   Brokers' motion for attorney fees and costs after finding that
   the claims of misrepresentation and fraud against Bar Brokers

REFERENCES FOR POINTS IN HEADNOTES
[1] 55 Am Jur 2d, Mortgages § 553.
[2] 37 Am Jur 2d, Fraud and Deceit § 12.
[3] 37 Am Jur 2d, Fraud and Deceit §§ 187, 222.
[4] 20 Am Jur 2d, Costs § 56.
   23 Am Jur 2d, Depositions and Discovery § 281.
   61A Am Jur 2d, Pleading § 26.
   Construction and application of state statute or rule subjecting
      party making untrue allegations or denials to payment of costs or
      attorneys' fees. 68 ALR3d 209.
[5] 77 Am Jur 2d, Vendor and Purchaser § 592.
[6] 25 Am Jur 2d, Ejectment § 3.
   77 Am Jur 2d, Vendor and Purchaser § 604.
[7] 37 Am Jur 2d, Fraud and Deceit § 333.

were unwarranted. The trial court denied sellers' motion for reasonable attorney fees. The purchasers appeal. *Held:*

1. The judgment of foreclosure, the directed verdict in favor of Bar Brokers and the award of attorney fees to Bar Brokers are affirmed. The directed verdict in favor of the sellers is reversed and the case is remanded for a new trial on purchasers' claims against the sellers for damages resulting from misrepresentation or fraud.

2. The evidence regarding the sellers, viewed in a light most favorable to the purchasers, was sufficient to submit the question of their innocent misrepresentation to the jury and the traditional test of fraud may have been met in regard to the sellers.

3. Bar Brokers was not a party to the contract and any loss would not inure to their benefit, so they could not be held liable for damages on a theory of innocent misrepresentation although their principal, the sellers, may be liable for the innocent misrepresentations of the agent. There was no evidence from which misconduct by Bar Brokers sufficient to meet the traditional test of fraud could be inferred.

4. The award of attorney fees to Bar Brokers was proper, based on Mr. Fredericks' deposition testimony that he knew of no misrepresentations made by them and that they had not done anything wrong.

5. The trial court's finding that the January 10, 1980, payment on the contract was in default for 45 days by the end of February was not clearly erroneous. The contract was also in default for non-payment of taxes for more than 45 days as of February 28, 1980.

6. A land contract in default can be accelerated and foreclosed without first giving the vendee notice and an opportunity to pay when, in the same circumstances, the contract could not have been forfeited without prior notice.

7. The purchasers' claims of fraud and misrepresentation were not, under the facts, a defense to the foreclosure action. It does not appear that the defaults that triggered the foreclosure were the result of a dispute arising out of the sellers' statements alleged in the counterclaim.

Affirmed in part and reversed in part. Costs to Bar Brokers only.

1. EQUITY — FORECLOSURE.

A foreclosure action in Michigan is equitable in nature (MCL 611.3180; MSA 27A.3180).

2. Fraud — Traditional Test.

The traditional test for actionable fraud provides that it must appear: (1) that defendant made a material misrepresentation, (2) that it was false, (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion, (4) that he made it with the intention that it should be acted upon by plaintiff, (5) that plaintiff acted in reliance upon it, and (6) that he thereby suffered injury.

3. Fraud — Innocent Misrepresentation.

The Michigan rule of "innocent misrepresentation" provides that where an action is brought to recover for false and fraudulent misrepresentations made by one party to another in a transaction between them, any representations which are false in fact and actually deceive the other, and are relied on by him to his damage, are actionable, irrespective of whether the person making them acted in good faith in making them, where the loss of the party deceived inures to the benefit of the other.

4. Pleading — Unwarranted Allegations and Denials — Expenses — Attorney Fees — Court Rules.

The purpose of the court rule regarding an award of reasonable expenses and attorney fees as a result of unwarranted allegations and denials is to impose realistic costs including actual attorney fees as a deterrent to bad faith pleading; the rule should be liberally applied where bad faith is shown, with an allowance of attorney fees realistically based on actual charges at prevailing rates (GCR 1963, 111.6).

5. Property — Land Contracts — Foreclosure — Notice — Forfeiture.

A land contract in default can be accelerated and be foreclosed without first giving the vendee notice and an opportunity to pay when, in the same circumstances, the contract could not have been forfeited without prior notice.

6. Property — Land Contracts — Common Law — Ejectment — Summary Proceedings.

The common-law action of ejectment no longer exists as a remedy following a land contract forfeiture; summary proceedings are the exclusive remedy based upon forfeiture (MCL 600.2902, 600.2932, 600.5726; MSA 27A.2902, 27A.2932, 27A.5726).

7. Vendor and Purchaser — Fraud — Continuance of Performance — Estoppel.

A party to whom fraudulent misrepresentations were made and

who relied thereon in entering into a contract for the purchase of land and sustained damages by reason thereof may keep that which he was fraudulently induced to purchase and sue for such damages as will make good the inducing representations without being estopped from recovery because of his continuing to have made the payments called for by the contract after discovery of the fraud.

*Chirco, Herrinton, Runstadler & Thomas* (by *Michael J. Sugameli),* for the sellers.

*Thomas Rosender,* for the purchasers.

*David A. Kanaan,* for Bar Brokers.

Before: WAHLS, P.J., and T. M. BURNS and P. C. ELLIOTT,* JJ.

P. C. ELLIOTT, J. Mr. and Mrs. Minchella (the sellers) filed a complaint on February 28, 1980, seeking to foreclose a May 8, 1975, land contract and a security agreement incorporating a promissory note by which they sold a restaurant with a liquor license to Mr. Fredericks and his corporation (the purchasers). The corporation was the land contract vendee, but he personally bought the equipment, liquor license and other personal property of the business. The purchasers filed a counterclaim for damages alleging fraud and misrepresentation. On April 1, 1981, the purchasers added as counterclaim defendants the sellers' agent, Professional Bar Brokers Realty Inc., and Michigan Bar Brokers Inc., both owned by the same men (Bar Brokers). Trial began on November 16, 1981. The foreclosure action, being equitable in nature (MCL 600.3180; MSA 27A.3180), was tried by the judge at the same time that the counterclaim was presented to a jury. After the proofs had been presented, the trial judge directed a verdict in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

favor of the sellers and Bar Brokers on the counterclaim. That occurred on the ninth day of the trial. Later, the judge granted a judgment of foreclosure. The judge also granted Bar Brokers' motion for attorney fees and costs pursuant to GCR 1963, 111.6 because she concluded that the claims of misrepresentation and fraud against them were unwarranted. She denied the sellers' similar motion for reasonable attorney fees.

We affirm the judgment of foreclosure. We affirm the directed verdict in favor of Bar Brokers and the award of their attorney fees. We reverse the directed verdict in favor of the sellers and remand the case for a new trial on purchasers' claims against them for damages resulting from misrepresentations or fraud.

### The Directed Verdict for the Sellers

*United States Fidelity & Guaranty Co v Black,* 412 Mich 99; 313 NW2d 77 (1981), states both the traditional test of fraud and the Michigan rule of "innocent misrepresentation" by one party to another party of a contract. The trial judge did not consider that the Michigan innocent misrepresentation test would apply to the sellers. Unlike Bar Brokers, the sellers were a party to the contract, and the sale, if induced by their misrepresentation, inures to their benefit.

We have carefully examined the record and we conclude that the trial judge incorrectly directed a verdict on the counterclaim in favor of the sellers. There were several claims of misrepresentation, but we will discuss only one of them as an example. There was testimony that Mr. Minchella told Mrs. Fredericks, who inquired on behalf of her husband, that there were two septic tanks functioning and adequately servicing the building and

there was evidence that actually there was but one tank. Mr. Fredericks testified that he expected to increase the hours of the business and would not have purchased it if the true sewage system had been disclosed. After the sale, the purchasers experienced frequent sewage backups that stained carpet, produced unpleasant odors and required closing of restrooms during business hours. It·could be inferred that the decline in business was related. In the light most favorable to the purchasers, the evidence was sufficient to submit to the jury the question of innocent misrepresentation, and, indeed, because the jury could have inferred that when Mr. Minchella said he had two septic tanks he must have known that he really had only one, the traditional test of fraud may have been met.

A footnote to *DePriest v Kooiman,* 379 Mich 44, 50, fn 4; 149 NW2d 449 (1967), observes that permitting the jury to decide in the first instance whether a claim has been made out is generally accepted as the better practice, to avoid retrials, even when, technically, it would be error to deny a motion for a directed verdict.

## THE DIRECTED VERDICT FOR BAR BROKERS

Bar Brokers was the sellers' agent. They were not a party to the contract and any loss would not inure to their benefit, so they could not be held liable for damages on a theory of innocent misrepresentation although their principal, the sellers, may be liable for the innocent misrepresentations of the agent. Therefore, any lability of Bar Brokers would require convincing proof of all of the traditional elements of fraud, including proof that Bar Brokers knew their representation was false or made it as a positive assertion, recklessly, without any knowledge of its truth. Our review of the

record satisfies us that there was no evidence from which such misconduct could be inferred. Therefore, we affirm the directed verdict in favor of Bar Brokers.

## THE AWARD OF ATTORNEY FEES

At his deposition, Mr. Fredericks said that he knew of no misrepresentations made by them and that Bar Brokers had not done anything wrong. On the strength of those admissions, Bar Brokers sought a summary judgment eight months before the trial. The judge denied the motion, but warned that she might award attorney fees.

*Flanagan v General Motors Corp,* 95 Mich App 677, 683; 291 NW2d 166, 169 (1980), says:

"The purpose of [GCR 1963] 111.6 is 'to impose realistic costs, including actual attorney fees, as a deterrent to bad faith pleading' * * *. If 111.6 is to achieve its objective it 'should be liberally applied in cases where bad faith is shown, with an allowance of attorney fees realistically based on actual charges at prevailing rates'."

We agree with the trial judge. There was no evidence whatever that would establish all of the elements of the traditional test for fraud against Bar Brokers. When a party acknowledges that one of the persons he has sued has done nothing wrong and the judge warns of the possible assessment of attorney fees, a lawyer should carefully consider whether continuation of that claim is wise.

## THE FORECLOSURE ACTION

The purchasers raise three issues: (1) whether the contract was in default for 45 days as required in the acceleration clause; (2) if so, whether the

law requires the sellers to give the purchasers notice of their intention to foreclose and time to cure the defaults before acceleration; and (3) if not, whether the purchasers' claims of fraud and misrepresentation are a defense to the foreclosure action.

## DEFAULT

Was the contract in default for 45 days? The payments due on January 10 and February 10, 1980, were not paid by February 28. Purchasers contended that two checks received by sellers in March of 1977 were not credited to the contract account. We believe that the trial judge correctly found that those checks were late payments of unpaid prior installments. Even if those checks were extra payments, the contract permitted the purchaser to pay more than the required amount, so excess payments in 1977 would not excuse a failure to pay in 1980. Purchasers also contended that two checks in the amount due on the promissory note had been misapplied to the note despite a notation on the checks that indicated they were to be paid on the contract. Those checks were dated 1976. No complaint of misapplication was ever made until the foreclosure. If those checks were not properly applied to the note, then the note was in default. The notation could have been written later on the cancelled checks. The trial court's finding that the January 10, 1980, payment was in default for 45 days by the end of February was not clearly erroneous. See GCR 1963, 517.1 and 810(2).

The contract was also in default for nonpayment of taxes. When the purchasers did not pay the taxes for 1975, 1976 and 1977, the bank that held the sellers' mortgage threatened foreclosure. The

purchasers then paid those taxes with interest and penalties. To prevent the recurrence of the risk of a tax sale, the mortgage bank required the sellers to pay the taxes into an escrow account by monthly installments. The sellers demanded that the purchasers pay the taxes to them, and the purchasers did pay $400 in 1979 toward the 1978 taxes of $2,282. The balance of the 1978 taxes was in default more than 45 days on February 28, 1980. See *Bishop v Brown,* 118 Mich App 819; 325 NW2d 594 (1982).

## NOTICE

Was notice of the seller's intention to accelerate and foreclose required along with time allowed in which purchasers could cure all defaults? Over the years the land contract payments were usually late. However, until February 25, 1980, the only time that a payment was late for 45 days or more was in June and July of 1977. When the payment due January 10, 1980, went unpaid for 45 days, both the contract and secured note were accelerated without warning and this foreclosure action was commenced. By that time, the purchasers had paid about $150,000 of the original price. The accelerated balances were nearly $99,000 on the land contract and more than $91,000 on the secured note. The note was not actually in default, however there was an agreement that a default in either the contract or the note would be deemed a default of the other.

The doctrine of waiver requiring a notice of intent to forfeit a land contract is explained in *Collins v Collins,* 348 Mich 320, 327-328; 83 NW2d 213, 217 (1957):

"The rule as to waiver is well stated in *Zadigian v*

*Gard,* 223 Mich 147, 152-153; 193 NW 783 (1923), where we said:

" 'The law does not favor forfeitures, and he who plants himself upon a forfeiture must look well to where he stands. It is true the law gives a vendor the benefit of remedies for defaults of a vendee, but the vendor may waive such remedies, expressly or by implication. If a vendee in default is recognized by the vendor as having existing rights under the contract, the default becomes quiescent, and a valid forfeiture will have to await a new default, or at least a quickening of the old one by demand for performance of the contract and reasonable opportunity afforded such a vendee to awaken from the repose of imagined security. *Waller v Lieberman,* 214 Mich 428; 183 NW 235 (1921); *Fry v Miller,* 220 Mich 463; 190 NW 228 (1922); *Letinsky v Smith,* 220 Mich 465; 190 NW 229 (1922).'

"In *Sliwinski v Gootstein,* 234 Mich 74, 78; 208 NW 47 (1926), this Court stated:

" 'If a vendor repeatedly accepts payments after due from the purchaser, habitually indulges him in delinquency, he thereby waives, as to future payments, strict compliance with the terms of the contract as regards time of payment, and he must give the said preliminary notice or demand before he can declare a forfeiture, and if forfeiture be declared without the preliminary notice, and ejectment instituted, the waiver may be used in defense of the action.

" 'It might be well to add that reform respecting such delinquency may be accomplished by the vendor's giving to the purchaser notice of his intention to require prompt payment in the future.'

"In our opinion, the long acceptance of delayed payments, the loaning of money to plaintiffs, the collection of rents by plaintiffs clearly shows that defendant did not intend to take any action to foreclose the land contract, but does show that defendant waived the prompt payments required by the land contract."

The phrase "action to foreclose" in the last paragraph quoted appears to be misleading. The *Collins* case did not involve a foreclosure action.

The doctrine of waiver developed as a relief from the harshness of forfeiture. It has consistently been applied to actions based upon forfeiture, namely ejectment and summary proceedings. The law appears to be that a land contract in default can be accelerated and be foreclosed without first giving the vendee notice and an opportunity to pay when, in the same circumstances, the contract could not have been forfeited without prior notice. *Bishop v Brown, supra,* p 829 said:

"Under MCL 600.3101; MSA 27A.3101, circuit courts have jurisdiction to foreclose land contracts. Acceleration clauses in land contracts are valid and enforceable. *Larson v Pittman,* 3 Mich App 348; 142 NW2d 479 (1966). The institution of foreclosure proceedings is sufficient notice that the seller has elected to exercise the right to accelerate. *No prior notice of the intent to foreclose is necessary. Dumas v Helm,* 15 Mich App 148, 151; 166 NW2d 306 (1968)." (Emphasis added.)

*Dumas v Helm, supra,* relied in part on *Brody v Crozier,* 242 Mich 660, 662; 219 NW 643 (1928), a foreclosure action, which noted:

"This suit was not to forfeit the contract, but to enforce payment in accordance with its terms."

When the doctrine of waiver which requires notice was developed, forfeiture was a harsh remedy. It no longer is harsh. Today foreclosure is the harsh remedy. The common law action of ejectment no longer exists as a remedy following a land contract forfeiture. MCL 600.2932; MSA 27A.2932 and MCL 600.2902; MSA 27A.2902. Summary proceedings are the exclusive remedy based upon forfeiture and the statute provides:

"For purposes of this chapter, moneys required to be

paid under the contract shall not include any accelerated indebtedness by reason of breach of the contract." MCL 600.5726; MSA 27A.5726.

This was observed in a footnote to *Gruskin v Fisher,* 405 Mich 51, 63-64, fn 6; 273 NW2d 893 (1979):

"In a circuit court action, the seller can, if the land contract so provides (the standard forms of land contract do), accelerate the balance and require the purchaser to pay the entire amount of the land contract balance. In summary proceedings, acceleration is not permitted and the purchaser can cure the default by paying the installments in default."

The *Gruskin* case, *supra,* also said, on page 65:

"At common law sending notice of forfeiture did forfeit the contract. The seller thereupon became entitled to possession of the premises. Actions for ejectment, trespass and self-help followed. Purchasers were summarily put out without opportunity to cure the default.
"Today the significance of sending a notice of forfeiture is altogether different."

It makes no sense today to require a notice of intent to forfeit a land contract as a precondition to forfeiture and summary proceedings in which the buyer will have time to redeem by paying up the unaccelerated amount due and to permit acceleration and foreclosure without notice. Foreclosure is the harsh remedy today. Not only is the vendee faced with acceleration, he may be liable on a deficiency judgment. The law should require notice and time to cure the default before a mortgage, land contract or other instrument for the sale of land can be foreclosed in equity or any other way including mortgage foreclosure by advertisement.

Ill health, unemployment or other calamity can cause almost any family to be unable to timely meet every month's payment on the home, farm, business or other real property financed over a long term.

However, because the doctrine of waiver has been applied to forfeiture only and the law appears to be accurately stated in *Brody v Crozier, supra; Bedford v Tetzlaff,* 338 Mich 102; 61 NW2d 60 (1953), *Dumas v Helm, supra,* and *Bishop v Brown, supra,* we feel that a requirement of notice before acceleration and foreclosure is a matter for the Legislature or the Michigan Supreme Court.

### Defense

Were the purchasers' claims of fraud and misrepresentation a defense to the foreclosure action? If any fraud or actionable misrepresentation occurred at the time of the sale, the purchasers could continue to buy the business and sue for their damages. *Elson v Harris,* 356 Mich 175; 96 NW2d 767 (1959). However, we believe that they could not sit on their right to sue and contend four or five years after the sale that misrepresentation at the time of the sale excuses their default. All monthly payments were made within 45 days for the 30 months before the January, 1980, payment became overdue for more than 45 days and the purchasers simply failed to pay more than $400 toward what they owed the sellers on the 1978 taxes. It does not appear that the defaults that triggered the foreclosure were the result of a dispute arising out of the sellers' statements alleged in the counterclaim.

Affirmed in part and reversed in part. Costs to counter-defendant Bar Brokers only.