**A. Richard NERNBERG, Plaintiff–Appellant,**

v.

**John PEARCE, et al., Defendants–Appellees.**

Nos. 93–1273, 93–1677.

United States Court of Appeals, Sixth Circuit.

Argued March 25, 1994.

Decided Sept. 9, 1994.

Robert L. Potter, Strassburger, McKenna, Gutnick & Potter, Pittsburgh, PA (argued and briefed), for A. Richard Nernberg and Arn Inc.

Patrick J. Burkett (argued and briefed), James J. Vlasic, David L. Nelson, Sommers, Schwartz, Silver & Schwartz, Southfield, MI, for Aviation Group, Inc., John Pearce and Donald Beaty.

Kim R. Kolb, David A. Lewsley, Chrysler Corp., Highland Park, MI, William L. McCandless (argued), DeNardis, McCandless & Muller, Detroit, MI, for Chrysler Pentastar Aviation, Inc.

Before: KEITH and MARTIN, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

KRUPANSKY, Senior Circuit Judge.

Plaintiff–Appellant, A. Richard Nernberg has appealed the district court's summary judgment in favor of defendants-appellees, John Pearce, Donald Beaty, Aviation Group, Inc. (AGI), and Chrysler Pentastar Aviation, Inc. In his original civil complaint filed in Pennsylvania state court, Nernberg charged defendants with common law fraud and RICO violations. The case was subsequently removed to the United States District Court for the Western District of Pennsylvania on the basis of diversity jurisdiction and then transferred to the Eastern District of Michigan. The district court granted summary judgment in favor of defendants on November 30, 1992. Nernberg's motion for reconsideration was denied on January 11, 1993, and this appeal ensued.

In 1986, Nernberg leased a Cessna Conquest II turboprop aircraft from the General Electric Credit Corporation (GECC). The lease was for a term of five years with a five-year renewal option. In 1990, prior to the end of the five-year term, Nernberg contacted GECC to request an early termination of the lease. GECC consented to an early termination on the condition that a buyer could be found to purchase the plane. GECC subsequently located a prospective buyer for the aircraft and Nernberg was instructed by GECC to deliver the aircraft to AGI at the Oakland–Pontiac Airport in Michigan for an end-of-lease and prepurchase inspection. Nernberg later learned that the prospective buyer, Paul Sutton, was an airplane broker who had selected AGI for the inspections because a former business associate, defendant Donald Beaty, was the supervisor of the engine shop at AGI. Beaty had previously performed other prepurchase inspections for Sutton.

Nernberg delivered the aircraft to AGI on August 2, 1990, and the new owner took possession on November 13, 1990. In the interim, both engines of the plane had been removed, disassembled and rebuilt. AGI charged GECC for the engine repairs which in turn sought reimbursement from Nernberg, as the lessee. Realizing that time was of the essence in completing the sale of the aircraft as a condition of cancelling his lease, Nernberg paid the charge for the engine work to GECC, "under protest," in order to terminate the lease, complete the sale of the aircraft and initiate an investigation into the suspected fraudulent actions of AGI. Once AGI received payment for the work from GECC, it released the aircraft and the plane was sold to Sutton.

Nernberg's suspicions of fraud concerning the engine repairs were prompted by the comparative results of two test flights of his airplane. On August 6, 1990, shortly after the aircraft had been delivered to AGI, it was flown to test engine performance. During that test flight, Geoffrey Oswald piloted the plane and Michael Gibson, a maintenance technician, recorded the flight data. Results were submitted to the engine manufacturer for evaluation. The engine manufacturer,

however, requested additional information to conclude its engine performance analysis. A second test flight was conducted on August 17, 1990, with the defendant Beaty as the technician. An evaluation of this test flight data reported that the right engine was 17% underpowered and that the left engine was 10% underpowered. On the basis of this test, Beaty removed the engines from the plane and substantially rebuilt them.

Nernberg's investigation into the engine repairs disclosed material discrepancies in the test flight data to support his charge of intentional fraud. First, the serial numbers listed for the engines on the two test flights were different. The serial numbers of the rebuilt engines in Nernberg's aircraft did not correspond to the serial numbers of the engines which Beaty had purportedly found to be underpowered during the second test flight. Moreover, the data available from the first test flight when compared with a published aircraft engine performance manual for the engines here in issue disclosed that the engines were well within a range of acceptable performance. These findings were verified by a subsequent independent evaluation by the engine manufacturer which confirmed that the engines in Nernberg's plane when it was delivered to AGI had not been underpowered and did not require rebuilding.

As a result of his investigation, Nernberg instituted this suit for damages against AGI, Pearce and Beaty wherein he alleged that Beaty, the engine shop supervisor, and Pearce, the director of maintenance, had committed an intentional fraud by representing to GECC that the engines in his plane were underpowered and needed repair. He further charged that the engines satisfied the manufacturer's performance criteria when the plane was delivered to AGI and that Pearce and Beaty contrived to rebuild the engines for the benefit of the new owner at Nernberg's expense.

Appeals from grants of summary judgment are reviewed under a *de novo* standard. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). The court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Massey v. Exxon Corp.*, 942 F.2d 340, 342 (6th Cir.1991). The evidence must be viewed in a light most favorable to the nonmoving party, but the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). There must be a genuine issue of material fact. *Middleton v. Reynolds Metals*, 963 F.2d 881, 882 (6th Cir.1992). A fact is material if it will "affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. Thus, "a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion. If, after a sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989) (adopting the "New Era" of summary judgment as defined by *Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

In the instant case, the district court entered summary judgment after concluding that plaintiff had failed to allege facts that would satisfy the following elements of common law fraud.

> The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these

facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.

*Hi-Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 247 N.W.2d 813, 815–16 (1976) (quoting *Candler v. Heigho,* 208 Mich. 115, 175 N.W. 141, 143 (1919)). Specifically, the trial court found that Nernberg had failed to allege reliance because at the time that he paid for the engine repairs he already had knowledge of the alleged fraud as demonstrated by the notation paid "under protest" on his check to indicate that he was paying for the engine repairs under duress to complete the sale of the aircraft. Hence, the court concluded that Nernberg had failed to allege that he suffered an injury as a result of relying on any misrepresentations of the defendants.

On appeal, plaintiff has asserted that the district court erred in concluding that there existed no conflict of material fact as to his reliance on defendants' fraudulent misrepresentation when he paid for the engine repairs. First, Nernberg has argued that under Michigan law, even if he had full knowledge of the fraud before his payment, a plaintiff who learns of fraud after a transaction is in progress may nevertheless complete the transaction and then recover for the fraud if the plaintiff would have been prejudiced had he aborted the transaction. Hence, he has contended that even if his payment for the repairs was made after the fraud had been discovered his cause of action for intentional fraud would not have been barred because the untimely delivery of the aircraft to its purchaser would have aborted the termination of the aircraft lease with GECC to Nernberg's detriment.

In *Elson v. Harris,* 356 Mich. 175, 96 N.W.2d 767 (1959), the sellers of a building had fraudulently misrepresented the condition of the roof to the purchasers who subsequently discovered the fraud after taking possession of the building but prior to completing the monthly installment payments for the contract. The court rejected defendants' arguments that plaintiff had waived their cause of action by continuing to make payments and concluded that the plaintiff-pur-

chasers could retain possession of the building, continue the monthly payments on the contract and still maintain an action for fraud. *Elson* has been consistently followed by other courts in Michigan. *See, e.g., Nowicki v. Podgorski,* 359 Mich. 18, 101 N.W.2d 371 (1960); *Minchella v. Fredericks,* 138 Mich.App. 462, 360 N.W.2d 896 (Mich.App. 1984); *see also Strand v. Librascope, Inc.,* 197 F.Supp. 743 (E.D.Mich.1961).

■ Although *Elson* and its progeny clearly demonstrate that a plaintiff may elect to continue payments to a defendant after discovering a fraud, this court's inquiry is not concluded in the case here at bar without addressing the issue of the reliance, if any, Nernberg had placed upon AGI's misrepresentations prior to reimbursing GECC for the cost of AGI services for rebuilding the aircraft engines. *Elson* and its progeny involved installment contracts where the plaintiffs directly relied on defendants' misrepresentations to enter the respective contracts and were thereafter permitted to continue the installment payments after the fraud had been discovered. The instant case differs from *Elson* in that the agreement to repair the engines was negotiated between GECC, the actual owner of the aircraft, and defendants. Moreover, defendants' fraudulent misrepresentations and request for payment was made directly to GECC and not to Nernberg. The only contact between Nernberg and defendants occurred after the engine repairs had been completed. Although Nernberg had become suspicious of a perpetrated fraud before making any payment for the engine repairs, he relied upon no direct misrepresentation concerning the performance of the engines since none had been made directly to him. Accordingly, although plaintiff is correct in observing that his payment for the allegedly fraudulent repairs does not bar this action, he still must prove reliance in some form.

■ It is generally accepted that a plaintiff is not required to prove direct reliance on a fraudulent misrepresentation to state a claim for fraud. *See, e.g., Learjet Corp. v. Spenlinhauer,* 901 F.2d 198 (1st Cir.1990); *Peerless Mills, Inc. v. AT & T,* 527 F.2d 445 (2d Cir.1975); *Nader v. Alle-*

*gheny Airlines, Inc.,* 512 F.2d 527 (D.C.Cir. 1975), *rev'd on other grounds,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). In *Cormack v. American Underwriters Corp.,* 94 Mich.App. 379, 288 N.W.2d 634 (Mich. App.1979), the court decided that a plaintiff may maintain an action for fraud even when a misrepresentation has not been made directly to the plaintiff but had instead been made to a third party with the intent and expectation that the misrepresentation would be repeated to induce reliance by a principle participant to a business undertaking, as in the instant case. In *Cormack,* the plaintiff, a resident of England, purchased an automobile in the United States and instructed the salesperson to arrange with Lloyds of London to extend his insurance coverage to the new vehicle. *Cormack,* 288 N.W.2d at 635. The salesperson contacted the insurance agent who later informed the salesperson that the insurance coverage had been extended as requested. The plaintiff never had any direct contact with the insurer. After plaintiff's automobile was stolen and coverage was denied, plaintiff sued the defendant insurer for fraud.

Relying on past precedent, the court concluded that

> where a party makes false representations to another with the intent or knowledge that they be exhibited or repeated to a third party for the purpose of deceiving him, that third party can maintain a tort action against the party making the false statements for the damages resulting from the fraud.

*Cormack,* 288 N.W.2d at 637 (citing *Oppenhuizen v. Wennersten,* 2 Mich.App. 288, 294, 139 N.W.2d 765, 768 (Mich.App.1966)). Accordingly, the court found that plaintiff had proven the reliance element because the representation of coverage had been made to the car salesperson with the intent to induce reliance by a third party, i.e., the plaintiff, and that the plaintiff had in fact relied upon the misrepresentations.

The facts of the instant case, although not identical to those in *Cormack,* exhibit a similar third party relationship. Pursuant to his lease with GECC, Nernberg was required to return the aircraft to the lessor after an operational flight inspection and a certification of clearance, subject to the cost of any required repairs necessary for the issuance of such certification. GECC was responsible for arranging the end-of-lease inspection and certification of the plane; hence, GECC effectively acted as Nernberg's agent or representative in arranging and authorizing the inspection at AGI. After Nernberg had been informed of a prospective purchaser for the plane, he delivered it to AGI for the requisite inspection as directed by GECC. He had no subsequent contact with defendants until after the engines had been rebuilt. GECC authorized the necessary repair of the engines and informed Nernberg of the alleged engine deficiencies after they had been rebuilt. Accordingly, applying the dictates of *Cormack,* if the alleged fraudulent misrepresentations concerning the underpowered engines had been made to GECC with the intention of inducing reliance on the part of Nernberg, plaintiff has satisfied the reliance element of intentional fraud. Because material facts bearing upon the defendants' intention to induce the plaintiff to rely upon their fraudulent misrepresentations concerning the performance capabilities of the engines here in controversy and thereby causing him to pay for the costs incidental to those repairs remain unresolved, the case must be remanded to the district court for trial.

Accordingly, for the reasons stated, the judgment of the district court is hereby **REVERSED** and **REMANDED**.