# STATE OF MICHIGAN

# COURT OF APPEALS

ERMA ROGERS REVOCABLE TRUST, by
DAVID PLUMLEY, Trustee, on Behalf of
Themselves and All Others Similarly Situated,

          Plaintiff-Appellee,

v

ERICKSON RETIREMENT COMMUNITIES,
REDWOOD CAPITAL INVESTMENTS, INC.,
SENIOR CAMPUS LIVING, INC., and SENIOR
CAMPUS SERVICES, LLC,

          Defendants,

and

HENRY FORD VILLAGE, INC., REDWOOD-
ERC MANAGEMENT, LLC, and LIFE CARE
SERVICES, LLC,

          Defendants-Appellants.

UNPUBLISHED
December 12, 2017

No. 332495
Wayne Circuit Court
LC No. 14-006796-CK

Before: GLEICHER, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Plaintiff, David Plumley, as trustee of his mother's revocable trust, filed this action against defendants alleging that they engaged in false and misleading actions that defrauded plaintiff's mother and many other residents of defendant Henry Ford Village, Inc. ("HFV") who had entered into residential agreements before December 1, 2000, for independent living units. Plaintiff asked the trial court to certify a class action consisting of all residents of HFV who did not receive a full refund of their entrance deposits on their individual units as advertised and promised by defendants. Following a hearing, the trial court certified a class action consisting of "[a]ll persons, and the representatives of their estates, who entered into Residence and Care Agreements with [HFV] prior to December 1, 2000 who have received less than a 100 percent full refund [as adjusted for agreed outstanding charges] of their entrance deposit and persons subject to declaratory relief." Defendants HFV, Redwood-ERC Management, LLC, and Life

-1-

Care Services, LLC (Defendants), filed for leave to appeal the trial court's order, which this Court granted.[1] We affirm.

In 1999, plaintiff's mother signed a Residence and Care Agreement with HFV, which required her to pay an entrance deposit of $125,000. The agreement provided that the entrance deposit was fully refundable after the unit was vacated, less any outstanding fees or charges owed to HFV. The agreement provided that the entrance deposit would be repaid upon "the subsequent occupancy of the Continuing Care Unit by another Resident."

Plaintiff alleges that after his mother died in 2013, HFV was unwilling to market the unit for less than $125,000, a price the market could not support, unless plaintiff agreed to accept a reduced refund, at a suggested amount of $93,000, which would enable defendants to market the unit at a more competitive and attractive price for a new resident. According to plaintiff, he was advised that if he did not agree to accept a reduced refund, there was a risk that the unit would not be occupied by a new resident and that plaintiff would not receive the refund. Defendants sent plaintiff a form amendment to his mother's original agreement, but plaintiff refused to sign it and insisted that he was entitled to a full refund of the entrance deposit in accordance with his mother's original agreement.

In May 2014, plaintiff filed this action and alleged claims for breach of contract, fraud in the inducement, breach of the duty of good faith and fair dealing, violation of the Michigan Living Care Disclosure Act (LCDA), MCL 554.801 *et seq*., and conversion. Plaintiff also requested that the trial court certify this matter as a class action to include all other similarly-situated residents, both past and current, who had been similarly impacted by HFV's practices regarding the payment and refund of entrance deposits and its marketing of the residential units. Effective August 1, 2014, defendants adopted a new standardized pricing policy, whereby it established the same prices for all units based on size and layout. The price of plaintiff's mother's unit was reduced to $117,000 under this policy, but it still had not been occupied by a new resident at the time this action was filed.

Following a hearing, the trial court granted plaintiff's request for class certification, but modified plaintiff's proposed class and defined the class as "[a]ll persons, and the representatives of their estates, who entered into Residence and Care Agreements with Henry Ford Village prior to December 1, 2000 who have received less than a 100 percent full refund of their entrance deposit and persons subject to declaratory relief." Defendants argue that the trial court erred in certifying this litigation as a class action.

"We review for clear error the trial court's factual findings regarding class certification, and review for an abuse of discretion the trial court's discretionary decisions." *Duskin v Dep't of Human Servs*, 304 Mich App 645, 651; 848 NW2d 455 (2014). A finding is clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made

---

[1] *Erma Rogers Revocable Trust v Erickson Retirement Communities*, unpublished order of the Court of Appeals, entered September 2, 2016 (Docket No. 332495).

a mistake." *Id.* To the extent that the parties' arguments involve the proper interpretation and application of the court rules, we review those issues de novo. *Id.*

Defendants first argue that the trial court applied an incorrect legal standard in deciding plaintiff's motion for class certification. In support of this argument, defendants rely on an isolated statement in the trial court's opinion wherein it remarked that "plaintiff properly states a claim upon which relief can be granted." Defendants argue that this statement demonstrates that the trial court erroneously applied a standard applicable to motions for summary disposition under MCR 2.116(C)(8). We reject this argument because review of the trial court's opinion as a whole reveals that the court followed and applied MCR 3.501(A)(1) to determine if plaintiff satisfied the requirements for pursuing this matter as a class action.

Defendants also complain that the trial court improperly based its decision on disputed allegations. In *Duskin*, 304 Mich App at 652, this Court discussed the level of proof necessary to meet the requirements for class certification, stating:

> Michigan requires the party seeking class certification to establish each prerequisite for class certification. The party's pleadings will only be sufficient to support certification if the facts are "uncontested or admitted by the opposing party." The court should not question the actual merits of the case. However, the proponent of certification must make "an adequate statement of basic facts to indicate that each prerequisite is fulfilled." [Footnotes omitted.]

In *Duskin*, 304 Mich at 652, this Court followed *Henry v Dow Chem Co*, 484 Mich 483, 496-499; 772 NW2d 301 (2009), in which our Supreme Court addressed whether trial courts are required to follow the federal courts' "rigorous analysis" for evaluating requests for class certification or whether courts are only required to follow MCR 3.501(A). Our Supreme Court stated:

> We agree with Dow that a certifying court may not simply "rubber stamp" a party's allegations that the class certification prerequisites are met. However, the federal "rigorous analysis" requirement does not necessarily bind state courts. We believe that the plain language of MCR 3.501(A) provides sufficient guidance for class certification decisions in Michigan. Given that MCR 3.501(A)(1) expressly conditions a class action on satisfaction of the prerequisites, a party seeking class certification is required to provide the certifying court with information sufficient to establish that each prerequisite for class certification in MCR 3.501(A)(1) is in fact satisfied. A court may base its decision on the pleadings alone *only if* the pleadings set forth sufficient information to satisfy the court that each prerequisite is in fact met. The averments in the pleadings of a party seeking class certification are only sufficient to certify a class if they satisfy the burden on the party seeking certification to prove that the prerequisites are met, such as in cases where the facts necessary to support this finding are uncontested or admitted by the opposing party.
>
> If the pleadings are not sufficient, the court must look to additional information beyond the pleadings to determine whether class certification is

proper. However, when considering the information provided to support class certification, courts must not abandon the well-accepted prohibition against assessing the merits of a party's underlying claims at this early stage in the proceedings. Similar to the federal district courts, state courts also have broad discretion to determine whether a class will be certified.

Certifying courts must be mindful that, when it is necessary to look beyond a party's assertions to determine whether class certification is proper, the courts shall analyze any asserted facts, claims, defenses, and relevant law without questioning the actual merits of the case. We believe the above analysis strikes the appropriate balance between the need to ensure that the class certification prerequisites are sufficiently satisfied and the need to preserve a trial court's discretion in making class certification decisions. [*Henry*, 484 Mich at 502-504.]

In this case, contrary to defendants' assertion, the trial court did not rely solely on the pleadings. Rather, it clearly considered evidence beyond the pleadings to find that class certification was appropriate. Such an analysis is consistent with *Henry*, and we find no error.

Defendants next argue that the trial court's definition of the class is overly broad because it includes current residents. Defendants maintain that these residents have no claim at this time because they have not vacated their units and, thus, have no present right to a refund. In its opinion granting class certification, the trial court included current residents who signed agreements before December 1, 2000, under which they were entitled to a full refund of their entrance deposits, because MCR 3.501(A)(2)(b) allows for class actions based on injunctive relief. The trial court further decided that the class could be expanded to include individuals who suffer damages after the case commences.

MCR 3.501(A)(2)(b) provides:

(2) In determining whether the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice, the court shall consider among other matters the following factors:

* * *

(b) whether final equitable or declaratory relief might be appropriate with respect to the class; . . .

Because the basis for plaintiff's class action is the existence of common questions concerning defendants' liability for breach of contract and fraud with regard to the Residence and Care Agreements, and these claims arose from defendants' practices of inducing residents who were entitled to a full refund of their entrance deposits to agree to accept a lesser refund so that their units could be marketed, it was appropriate to allow current residents to join the class action. Even though these residents had not yet suffered damages, it was permissible to add them to the class because declaratory or injunctive relief was available to them for the same legal questions that formed the basis of the class action.

Defendants argue that because they adopted standardized pricing in 2014, current residents are no longer harmed by the alleged practices at issue in this case. However, plaintiff's complaint was that defendants did not market the vacated units at the fair market price. Plaintiff presented evidence that, despite defendants' adoption of standardized pricing, units were still not being marketed according to real estate market conditions, and residents continued to sign amendments to obtain favorable marketing of their units. Therefore, it was appropriate to include within the class all current residents who may be affected by agreements entered into before December 1, 2000.

Defendants argue that this case is analogous to *Duskin*, but that case is factually distinguishable. *Duskin*, 304 Mich App at 653-654, involved a discrimination action, and the proposed class included all male minority employees, including individuals who were not denied promotions and, therefore, suffered no harm. This Court held that objective criteria was required to support the definition of the class, which could not be satisfied where there was no way to accurately measure how many employees who had not applied for promotions declined to do so due to discrimination. *Id*. In contrast, the class in this case is defined by objective criteria, namely, residents who are subject to an agreement in effect before December 1, 2000, and who had not received a full refund.

Defendants also argue that the class improperly includes members who had signed amendments to their Residence and Care Agreements to accept discounted refunds. Defendants argue that amendments to the original agreements are enforceable and, therefore, those individuals do not have claims. However, the heart of plaintiff's action is that defendants refused to honor the terms of the original agreement to provide full entrance deposit refunds. Plaintiff alleges that defendants engaged in fraudulent and misleading practices by inducing residents to amend their agreements to accept less than a full refund in exchange for defendants' cooperation in making reasonable efforts to re-let the members' units. The fact that some residents signed amended agreements and agreed to accept reduced refunds does not foreclose their participation in the class of litigants who may have been harmed by defendants' alleged conduct at issue in this case. Indeed, one who claims fraud may still continue to exercise rights under a contract and claim damages for differences between the contract actually entered and the contract as represented. See *Elson v Harris*, 356 Mich 175, 178-180; 96 NW2d 767 (1959).[2]

Defendants also argue that because plaintiff did not sign an amended agreement, he is not a proper representative of residents who signed amended agreements. Plaintiff's claims, however, seek not only to enforce the original agreements for a full refund, but also to challenge defendants' practices of marketing units for sale. Plaintiff alleges that defendants' practice of

---

[2] We also note that defendants' argument that these residents are required to tender back the amount paid to them under the amended agreement is misplaced because former residents are not necessarily seeking to rescind their agreements to vacate their properties, and the amended agreements are not releases for the claims asserted in this action. See *Stefanac v Cranbrook Ed Community*, 435 Mich 155, 165-167; 458 NW2d 56 (1990); *Gloeser v Moore*, 283 Mich 425, 431; 278 NW 72 (1938); *Dorgan v Birney*, 272 Mich 145, 153; 261 NW 278 (1935).

inducing residents to sign amended agreements in exchange for defendants' cooperation in marketing the residents' units itself violates obligations under the residents' original agreements. Plaintiff's theory is that defendants' improper and allegedly fraudulent practices caused economic harm to residents who signed an amended agreement (and thus received a reduced refund), as well as residents who refused to sign an amended agreement, because defendants refused to market all of the residents' units in good faith. Although plaintiff and residents who signed an amended agreement may have been harmed in different ways, the alleged cause of that harm was based on the same underlying conduct for both groups of residents. Therefore, the trial court did not err in concluding that plaintiff was also affected by defendants' practice of requesting residents to sign amended agreements. Accordingly, plaintiff was a proper representative of the class.

Defendants also argue that residents who vacated their units after defendants adopted standardized pricing on August 1, 2014, should not be part of the class because their implementation of a standardized pricing plan evidences good-faith marketing of all units. According to defendants, under this new plan, deposits paid by new residents are based on a standard formula, relying on the size or floor plan of the units, not the amount paid by the previous resident of each unit. However, it is unclear how this method of doing business eliminates the possibility that defendants may still not be properly paying full refunds to residents who entered into agreements before December 1, 2000. We are not convinced that the trial court erred by failing to exclude from the class those residents who entered into agreements before December 1, 2000, but vacated their units after August 1, 2014.

Next, defendants argue that plaintiff failed to establish all requirements for a class action set forth in MCR 3.501(A)(1), which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if:
>
> (a) the class is so numerous that joinder of all members is impracticable;
>
> (b) there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;
>
> (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class;
>
> (d) the representative parties will fairly and adequately assert and protect the interests of the class; and
>
> (e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

Plaintiff sought to define the class to include residents who signed Residence and Care Agreements before December 1, 2000. Plaintiff presented evidence that there were 223 former residents who signed agreements before December 1, 2000, and had vacated HFV since May 2008, and 839 current residents, many of who signed agreements before December 1, 2000. The

trial court agreed that it would be impracticable to join these residents in a single action. Although the trial court redefined the class to include only those residents who entered into Residence and Care Agreements before December 1, 2000, and who either did not receive a full refund or were subject to declaratory relief, it found that "there are still a sufficient number of former residents who did not receive full refunds of their entrance deposits, or who may be threatened with the same conduct, to satisfy the criteria for establishing numerosity under MCR 3.501(A)(1)(a)." Defendants argue that plaintiff did not meet his burden of proving numerosity because the number of potential members did not take into account adjustments to the class. We disagree.

In *Zine v Chrysler Corp*, 236 Mich App 261, 287-288; 600 NW2d 384 (1999), this Court stated:

> There is no particular minimum number of members necessary to meet the numerosity requirement, and the exact number of members need not be known as long as general knowledge and common sense indicate that the class is large. Because the court cannot determine if joinder of the class members would be impracticable unless it knows the approximate number of members, the plaintiff must adequately define the class so potential members can be identified and must present some evidence of the number of class members or otherwise establish by reasonable estimate the number of class members. [Citations omitted.]

Although the number of members in the trial court's redefined class is unclear, plaintiff was not required to identify the number of affected individuals with specificity. Initially, plaintiff identified a group of 223 former residents who signed agreements before December 1, 2000. According to HFV's executive director, a "high majority" of residents received full refunds. But even if the group of 223 former residents is substantially reduced, the trial court also included within the class current residents who signed agreements before December 1, 2000, and were still residing in their units. Plaintiff presented evidence that there were 839 current residents at HFV. Again, the number of current residents who signed agreements before December 1, 2000, is unclear. However, we are satisfied that plaintiff sufficiently demonstrated a potential class large enough that joinder is not practical. In *Rodriguez v Berrybrook Farms, Inc*, 672 F Supp 1009, 1013 (WD Mich, 1987), the court explained that a class between 21 and 40 may be sufficient for a class action, while more than 40 typically is sufficient. The court stated:

> It is well settled that while there are no "magic numbers" which automatically signify the existence or non-existence of a class action, the general rule of thumb is that plaintiffs should be so numerous so as to make it impracticable to bring them all before the court. Rule 23(a)(1). *See e.g.*, *Dale Electronics, Inc. v. RCL Electronics, Inc.*, 53 F.R.D. 531 (D.N.H. 1971). *See also* Moore, *Moore's Federal Practice*, ¶ 23.05[1], at 23-151; 13-155 (2d Ed. 1985) (citing modern trend and noting number under 21 usually not enough; between 21 and 40 mixed response; and where numbers are over 40 and in excess of one hundred always satisfactory). [*Id*.]

While a plaintiff cannot rely on speculation, it is not necessary to know the exact size of the class. As explained in *Rodriquez,* 672 F Supp at 1013:

> Plaintiffs need only demonstrate that it is extremely inconvenient or difficult to join the members of the class. Wright & Miller, *Federal Practice Procedure,* § 1672 at 573. Further, mere speculation as to the number of parties involved is insufficient to satisfy Rule 23(a)(1). *See Weathers v. Peters Realty Corporation,* 499 F.2d 1197 (6th Cir. 1974). Still, where the exact size of a class is not known, but common sense indicates that the number is large, courts have sometimes taken judicial notice of the size of the class and assumed that joinder is impracticable. *Cf. Bartelson v. Dean Witter & Co.,* 86 F.R.D. 657 (E.D.Pa. 1980); *see also Evans v. United States Pipe & Foundry Co.,* 696 F.2d 925 (11th Cir. 1983) (plaintiffs not required to show exact size of class and doubts should be resolved in favor of certifying the class).

Here, plaintiff was only required to provide common sense estimates of the class size. Plaintiff presented evidence of the number of current residents, as well as former residents who had signed agreements before December 1, 2000. That evidence supports the trial court's determination that "there are still a sufficient number of former residents who did not receive full refunds of their entrance deposits, or who may be threatened with the same conduct, to satisfy the criteria for establishing numerosity under MCR 3.501(A)(1)(a)."

Another requirement that must be shown by a plaintiff seeking to pursue a class action is that "there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members." MCR 3.501(A)(1)(b). The requirement of commonality concerns

> whether there "is a common issue the resolution of which will advance the litigation." *Sprague v General Motors Corp,* 133 F3d 388, 397 (CA 6, 1998), cert den 524 US 923; 118 S Ct 2312; 141 L Ed 2d 170 (1998). It requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." [*A&M Supply Co v Microsoft Corp,* 252 Mich App 580, 599; 654 NW2d 572 (2002) (citation and quotation marks omitted).]

Yet there is no requirement that all questions necessary for ultimate resolution be common to the members of the class. *Id.*

In this case, the trial court found that the class members' claims involved the same general facts and theories related to a common scheme by defendants to lease units to residents promising a full refund upon reoccupancy. Plaintiff relied on theories of breach of contract, fraud, breach of the duty of good faith and fair dealing, violation of the LCDA, and conversion. The trial court found that the proofs regarding reliance did not foreclose a class action because defendants used standard forms that did not significantly vary in content over the years. In addition, the trial court found that, although the element of damages would be individualized for each resident, the common liability issues predominated over the assessment of individual damages.

We agree with the trial court that plaintiff demonstrated that his claims can be decided on a class-wide basis considering that the claims were based on theories that defendants used substantially similar residential agreements for their residents and, thereafter, used a common scheme or method of trying to get residents to (1) agree to amend their original agreements or (2) risk not having their units marketed in a fair manner, thereby causing residents to either not receive full refunds or have their refunds significantly delayed. In both scenarios, plaintiff's theories of liability were based on defendants' common practices.

Defendants attempt to identify differences among the potential class members, such as differences in the types of units HFV provides, the different management companies that were involved over the years, and the different times when units were marketed. We agree with plaintiff that these differences do not materially impact plaintiff's claims. To reiterate, plaintiff's claims involve HFV's agreements that promised full refunds to residents, and HFV's common practice of allegedly breaching those agreements by not honoring that term and inducing residents to agree to accept a lesser refund in order to have their units marketed at a lower price so that the residents could receive a lesser refund on a timely basis. While differences in individual units or the times when units were vacated may be factors in calculating damages, those differences do not impact the common liability issues in this litigation. Because the common issues regarding defendants' liability predominate over individual claims, plaintiff met his burden in proving commonality. This conclusion is supported by an examination of each of plaintiff's individual claims.

Plaintiff's fraud claim is based on generalized allegations common to all residents of the class, not just his mother. He is relying on defendants' use of standardized agreements, amendments, and advertising practices. Reliance can be established on a class-wide basis because of the use of standardized documents that have not significantly varied over the years. See *Stanich v Travelers Indemnity Co*, 249 FRD 506, 518 (ND Ohio, 2008) ("Where there are uniform presentations of allegedly misleading information, or common omissions throughout the entire class, especially through form documents, courts have found that the element of reliance may be presumed class-wide, thereby obviating the need for an individualized inquiry of each class member's reliance."). Because this case involved the use of form documents that did not significantly vary in their terms over the years, plaintiff's fraud claim was suitable for class-wide adjudication.

Plaintiff's claim for breach of contract was based on HFV's continuous practice of not fairly marketing units unless a resident agreed to an amendment to accept less than a full refund, which was a practice common to all residents. Plaintiff's claim for breach of the duty of good faith and fair dealing was based on defendants' alleged practice of not fairly marketing a unit for re-letting unless a resident agreed to an amendment to accept a lesser refund, which, again, was common to all residents. Therefore, it was appropriate to adjudicate these claims in a class-wide action.

Plaintiff's complaint included additional allegations that defendants violated the LCDA by making misleading statements to residents and in HFV's advertising materials regarding a resident's right to receive a full refund. Again, similar to plaintiff's claims for fraud and breach of contract, plaintiff is relying on the form agreements and HFV's advertising materials to show that residents were led to believe that entrance deposits would be fully refunded when, in reality,

defendants were not actually following that practice. Again, this claim is appropriate for a class action because it is based on evidence common to the class members. Similarly, plaintiff's conversion claim involves the same facts related to defendants' common practice of not paying full refunds, resulting in the improper retention of deposits that were owed to residents. Accordingly, it was also appropriate to adjudicate the conversion claim in a class-wide action.

Defendants argue that class certification was improper because an award of damages to each class member would need to be individualized, thereby requiring numerous "mini trials" and making class action litigation unmanageable. We disagree.

A class action is not foreclosed even if separate trials on damages may be necessary, especially if it is possible to use a method or formula to determine actual damages or injury to each class member. *A&M Supply*, 252 Mich App at 600-601. For those members who signed amendments, a formula for determining their potential damages is possible based on the entrance deposits they paid and the amounts they actually received for discounted refunds. It appears that damages that flow from the fraud claims, claims for breach of good faith and fair dealing, conversion, or violation of the LCDA would be subject to a similar formula for determining damages. While an assessment of damages would be performed on an individual basis, once the issues regarding liability are resolved, damages for tort or fraud claims likely would be imposed on a class-wide basis, and any claims based on actual damages could be calculated using the amounts in each resident's original agreement and the amounts set forth in any amendment entered into by a resident. Defendants have not shown that it is inappropriate to resolve the common claims on a class-wide basis merely because damages must be assessed on an individual basis.

Another requirement for an action to be pursued on a class-wide basis is that the plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." MCR 3.501(A)(1)(c). In *Mich Ass'n of Chiropractors v Blue Cross Blue Shield of Mich*, 300 Mich App 551, 573; 834 NW2d 148 (2013), this Court explained the typicality requirement as follows:

> Commonality and typicality "tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen Tel Co of the Southwest v Falcon*, 457 US 147, 157 n 13; 102 S Ct 2364; 72 L Ed 2d 740 (1982). However, they are separate elements. Typicality is established when "the claims or defenses of the representative parties are typical of the claims or defenses of the class [.]" MCR 3.501(A)(1)(c). When the allegations merely make a bare statement that the requirement is met, the trial court must independently determine that the plaintiffs can sufficiently support "their allegations that their legal remedial theories were typical of those of the class." *Henry*, 484 Mich at 506 n 40.

In this case, the trial court ruled as follows:

Plaintiff's claims are typical of the proposed members of the class for two reasons. First, Plaintiff's claim is based on the same legal theory as the other class members. Plaintiff's legal theories include breach of contract, fraud, misrepresentation, and violations of the Michigan Living Care Disclosure Act. Second, Plaintiff's claims also arise from the same alleged course of conduct regardless of whether Plaintiff or the proposed class members signed the amendments to the Residence and Care Agreements. This conduct includes allegations that Defendants wrongfully misled prospective tenants to believe that the entrance deposit would be 100 percent refundable, attempts to fraudulently deceive former residents to believing they were required to surrender a portion of their entrance deposit, and refusal to provide former residents with the full amount of the entrance deposit refund. Therefore, the claims of the Plaintiff are typical of the proposed members of the class.

Defendant's [sic] assert that Plaintiff's claim is not typical of the class because Plaintiff's unit at Henry Ford Village is distinguishable from other proposed class members with respect to the unit's characteristics and timing of sale. However, this argument is primarily aimed at the individualized calculation of damages. As stated above, individualized calculations of damages do not preclude class certification. Plaintiff's claims are typical of the class members because they are based on the same legal theories and arise from the same alleged conduct.

Defendants argue that plaintiff's claims are not typical of those of other class members because he did not sign an amendment to accept a discounted refund. Although defendants correctly observe that the class consists of two different types of residents—those who agreed to accept a discounted refund and those who chose not to amend their original agreement—this difference does not materially alter the nature of plaintiff's claims for both types of residents. Plaintiff's claims for fraud and breach of contract relate to defendants' representations that residents would receive a full refund of their entrance deposits and their failure to adhere to the terms of the original agreements entered into by all class members for a full refund upon reletting of their individual units. Plaintiff's theory is that both types of residents were affected by defendants' common practice of inducing residents to agree to accept a discounted refund. Plaintiff maintains that defendants' practice of insisting on a discounted refund to obtain competitive marketing of a vacated unit breached duties owed under the original residential agreements and supports a claim for fraud, regardless of whether a resident actually agreed to accept a discounted refund. Although the execution of amendments and the receipt of partial refunds by some residents may affect the calculation of individual damages, it does not affect the typicality of plaintiff's claims with respect to the class.

Defendants also argue that plaintiff's claims are not typical of other residents' claims because different management companies were involved at various periods and the occupancy of residential units was affected by fluctuations in the real estate market. These factors do not affect the typicality of plaintiff's claims. Plaintiff's theory is that HFV continued to use the same method or scheme when it had residents sign like agreements and like amendments that did not significantly vary depending on which management company was handling the acquisition of units by residents. Each management company was alleged to have acted as HFV's agent. The

differences in the identities of the agents may be relevant to assessing the liability of each individual defendant, but does not impact the typicality of plaintiff's claims, which are based on HFV's common scheme and practices, regardless of which management company was involved.

To maintain a class action, a plaintiff must also show that "the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice." MCR 3.501(A)(1)(e). In *A&M Supply*, 252 Mich App at 601-602, this Court explained:

> MCR 3.501(A)(1)(e), the fifth and final class action factor, asks whether a class action, rather than individual suits, will be the most convenient way to decide the legal questions presented, making a class action a superior form of action. In deciding this factor, the court may consider the practical problems that can arise if the class action is allowed to proceed. "The relevant concern . . . is whether the issues are so disparate" that a class action would be unmanageable. To determine whether a class action is a superior form of action, a trial court must consider:
>
>> (a) whether the prosecution of separate actions by or against individual members of the class would create a risk of
>>
>>> (i) inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; or
>>>
>>> (ii) adjudication with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;
>>
>> (b) whether final equitable or declaratory relief might be appropriate with respect to the class;
>>
>> (c) whether the action will be manageable as a class action;
>>
>> (d) whether in view of the complexity of the issues or the expense of litigation the separate claims of individual class members are insufficient in amount to support separate actions;
>>
>> (e) whether it is probable that the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action; and
>>
>> (f) whether members of the class have a significant interest in controlling the prosecution or defense of separate actions. [Footnotes omitted.]

The superiority and commonality requirements are related because if individual questions of fact predominate over common questions, the case will not be manageable as a class action. *Duskin*, 304 Mich App at 658.

Here, the trial court found that this requirement supported pursuing plaintiff's claims in a class-wide action, stating:

> In the present case, this Court finds that a class action would be the most convenient way to adjudicate this matter. Under MCR 3.501(A)(2)(a), the defendant may be subjected to inconsistent standards of conduct if each proposed members [sic] claim were tried individually. Furthermore, Plaintiff is also seeking equitable relief in addition to damages. MCR 3.501(A)(2)(b).

As explained previously, the underlying issues involve HFV's use of standardized agreements and amendments, which were common to all residents, and HFV's common practice of inducing residents to agree to a discounted refund in order for their units to be fairly marketed. Individualized evidence becomes more necessary when determining individual damages, but the overall issues related to defendants' liability involve matters common to all residents. We are not persuaded by defendants' claim that pursuit of this action on a class-wide basis will require a massive amount of discovery for each individual resident considering that the claims are based on standardized form agreements and amendments, as well as practices common to all residents. In addition, the information related to each resident and each unit should be within defendants' possession. To the extent that damages must be individualized, this alone does not render a class action inappropriate.

With respect to whether HFV violated a duty of good faith and fair dealing when marketing the units, defendants should be able to offer evidence of their marketing efforts at various times during the years in question to explain how it responded to fluctuations in the real estate market. Defendants also argue that the potential claims by former residents and their estates are large enough to support individual actions. This may be true for some residents who are due a full refund, but not necessarily so for residents who allegedly were induced to sign an amendment to accept a lesser refund.

Overall, the trial court, which will be tasked with handling the case, found that the case was more manageable as a class action. Considering the predominately common questions of fact regarding defendants' liability, the trial court did not err in ruling that a class action was the superior method for resolving the claims.

The final requirement for certification of a class action is that "the representative parties will fairly and adequately assert and protect the interests of the class." MCR 3.501(A)(1)(d). The adequacy element requires a "showing that 'class representatives can fairly and adequately represent the interests of the class as a whole.' " *Duskin*, 304 Mich App at 657 (citation omitted). "To show adequacy, the proponents must show that (1) counsel is qualified to pursue the proposed class action, and (2) the members of the class do not have antagonistic or conflicting interests." *Id*.

In this case, the trial court addressed the requirement as follows:

Plaintiff's counsel appears to have adequate experience in litigating complex class actions. Pl's Exhibit 9. Also, there is no assertion that Plaintiff's counsel is unqualified to pursue this action. Moreover, there appears to be no conflicting interests between the representative plaintiff and the proposed class members. Accordingly, the requirement of adequacy is satisfied as to this claim.

Defendants do not dispute that plaintiff's counsel and his law firm, which has handled other class actions, was qualified to pursue this matter as a class action. Defendants instead focus on whether plaintiff is qualified to act as a class representative. As discussed previously, we believe that plaintiff is qualified to act on behalf of other proposed class members, despite differences in the circumstances of some of the residents.

Defendants argue that plaintiff cannot represent other class members because he dealt only with Life Care Services as HFV's management company, while other class members dealt with other management companies. As explained earlier, plaintiff's claims are not dependent on the identity of the management company, but instead are based on form agreements and policies that were generally consistent throughout the tenure of the different management companies. Plaintiff's theory is that the management companies were acting as HFV's agents in carrying out its common policies. The different identities of the management companies have little or no impact on plaintiff's ability to properly represent the interests of other class members.

Defendants also argue that plaintiff's position is at odds with the entire class, or at least current residents, because plaintiff is seeking to force an overall reduction in the amounts charged for entrance deposits, and to force HFV to repay entrance deposits before units are reoccupied. Defendants contend that if plaintiff is successful, it will increase the likelihood that HFV will file for bankruptcy protection because it already has a negative cash flow and has been in default to its secured bondholders.

We are not persuaded that plaintiff's claims would necessarily cause an increased risk of bankruptcy. In particular, plaintiff is not challenging the requirement that a unit must be reoccupied before a refund is paid back to a former resident; he is only claiming that defendants are unwilling to fairly market a unit unless a resident signs an agreement to accept a lesser refund. Further, the amount of an entrance deposit that HFV accepts from new residents has been left to HFV. It is not appropriate for defendants to argue that plaintiff will be responsible for any economic harm that may occur to HFV when it was HFV who offered 100 percent refunds of entrance deposits. In addition, to the extent that bankruptcy may affect all refund claims as unsecured debts, as defendants allege, such a scenario would also impact plaintiff's claim for a full refund. Defendants have not shown that plaintiff cannot properly represent the interests and claims of other class members.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien

-14-